**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Shanna Love, | ) | **CASE NO. 1:12 CV 2260** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| AutoZone Stores, Inc., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**Introduction**

This matter is before the Court on defendant AutoZoners LLC's (AutoZone)[1] Motion for

Summary Judgment (Doc. 19). This case arises out of plaintiff's employment with defendant.

For the following reasons, defendant's Motion for Summary Judgement is GRANTED.

**Facts**

This matter was originally filed in the Cuyahoga County Court of Common Pleas and

removed to this Court on the basis of diversity of citizenship and federal question jurisdiction.

---

[1] Plaintiff filed her complaint against "AutoZone Stores Inc." rather than "AutoZoners LLC." The parties do not dispute that AutoZoners is the correct defendant.

1

The Complaint sets forth three claims based on federal and state law arising out of plaintiff's employment with defendant and her subsequent termination.

### A. Defendant's Organizational Structure

Defendant, AutoZone, is a national retailer and distributor of automotive parts and accessories. AutoZone stores carry an array of products for cars, SUVs, vans and light trucks, including new and remanufactured automotive parts, maintenance items, and accessories that allow customers to do repairs on their own vehicles. This is termed the DIY side of the store. (Doc. 19 Ex. C p. 6). Many AutoZone stores also have a commercial side that provides commercial credit and delivery of parts to entities like repair garages, dealers, and service stations who have commercial accounts with AutoZone. (Doc. 19 Ex. C p. 6).

Typically, each AutoZone store employs several part-time or full-time sales associates on the DIY side to assist customers. These sales associates report to the parts sales managers (PSMs). PSMs are considered management. They are responsible for opening and closing an AutoZone store, customer service, overseeing the sales associates and general operations of the store. (Doc. 19 Ex. B p. 5-6). PSMs report to the store manager.

When a store has a commercial side, it will employ part-time and full-time drivers to deliver orders to commercial customers. It will also employ a commercial sales manager and, if demand is great enough, several commercial specialists. (Doc. 19 Ex. B p. 5). Both commercial specialists and commercial sales managers are members of management and are under the direction of the store manager. (Doc. 19 Ex. B 5-6; Ex. C p. 23).

At the time of plaintiff's hiring in February 2009, the store manager at Store 1799 was Tim Allgood. When plaintiff was terminated in August 2011, the store manager was Samuel

2

Grant. A store manager reports to the district manager who was Mike Vruvas during all of plaintiff's employment. (Doc. 19. Ex. C).  The district manager reports to the regional manager who was John Morgan during all of plaintiff's employment. (Doc. 19 Ex. B p. 4).

### B. Plaintiff's Employment With Defendant

Plaintiff, a female, applied for a sales associate position with AutoZone in December 2008, seeking $7.50 per hour. Tim Allgood interviewed plaintiff. In February 2009, defendant hired plaintiff as a part-time commercial driver at Store 1799, where she remained throughout her time with AutoZone. Plaintiff's starting salary was $8.00 per hour. (Doc. 19 Ex. A p. 34-35).

In October 2010, plaintiff was promoted from commercial driver to commercial specialist, a management position on the commercial side of the store. At this time she was given a raise from $8.50 to $10.00 per hour. Mr. Allgood recommended plaintiff's promotion and raise, both of which were approved by Mr. Vruvas. (Doc. 19 Ex. A p. 22-23).

Because of the need for more staff on the DIY side of the store, on June 5, 2011, plaintiff was transferred from commercial specialist to a PSM position. This was a lateral move and occurred when Mr. Grant was manager of Store 1799.

During plaintiff's employment with defendant, Mr. Vruvas visited Store 1799 on approximately a weekly basis. Mr. Vruvas referred to plaintiff as "Little Girl" during her time with defendant and seldom addressed her by her name. During her employment, plaintiff never complained of gender discrimination with regard to her wages and never made a formal complaint about Mr.Vruvas's means of addressing her. (Doc. 19 Ex. A p. 15).

### C. Plaintiff's Termination

On the evening of July 20, 2011, plaintiff was responsible for closing at Store 1799. As

part of the closing procedure, PSMs are required to reconcile the cash drawers, or tills, of the store's registers. This process involves separating the $150 that the till starts off with in the morning from the rest of the cash taken in during the day, and leaving the $150 in the till. The PSM is then supposed to review the remaining cash and ensure that it matches the receipts. This cash is put into deposit envelopes. After this process is completed, the PSM is responsible for putting the tills into AutoZone's safe in the store manager's office and locking it. (Doc. 19 Ex. C p. 9, 12-14). Along with setting the alarm and locking the store doors, the closing procedure is one of the basic tasks expected of a PSM. (Doc. 19 Ex. B p. 9). When plaintiff left the store that night, she failed to reconcile a cash register and left the till in the register unsecured overnight. This was discovered the next morning by PSM Steve Durden who opened the store.

Plaintiff was issued a Corrective Action Review Form (CARF) the next day by Samuel Grant when Mr. Durden reported it to him.[2] Mr. Grant reported the incident to Mr. Vruvas who then reported it to David Pruett, AutoZone's Regional Loss Prevention Manager.

On August 5, 2011, plaintiff was interviewed by Mr. Pruett, with Mr. Vruvas serving as a witness. During the interview, plaintiff admitted that she had failed to reconcile a register, that she had left a till in the register overnight, and that this had caused a $250 loss to Autozone. Plaintiff, however, denied that she had taken the money. Plaintiff explained her failure to follow AutoZone's cash handling procedure was because she had been "moving too fast and forgot because she was new to closing." (Doc. 19 Ex. C p. 29). She acknowledged that her conduct in failing to reconcile the till and secure the money was against company policy. (Doc. 19 Ex. A p.

---

[2]  Plaintiff's CARF issued the next day indicates that it is a "2nd Written Warning." Additionally, during his deposition, Mr. Pruett, the LP manager, said "Mike Vruvas called me and told me that the tills were left out overnight and Shanna failed to count the safe and **once again** left the tills open overnight as well."  (emphasis added)

31). During this interview, plaintiff additionally admitted that she marked down merchandise on several occasions when the customer was a few dollars short. (Doc. 19 Ex. A p. 75-78). Plaintiff admits she knew these types of markdowns were a violation of company policy. (Doc. 19 Ex. A p. 37).

Mr. Morgan made the decision to terminate plaintiff's employment. (Doc. 19 Ex. G). On August 15, 2011, plaintiff learned from her store manager, Mr. Grant, that her employment had been terminated. (Doc. 19 Ex. A p. 40-41).

Plaintiff thereafter filed this complaint. Count One alleges defendant violated Ohio Revised Code § 4112 by paying plaintiff less than her male PSM counterparts and alleges that gender was a motivating factor in plaintiff's termination. Count Two alleges a violation of the Equal Pay Act amendment to the Fair Labor Standards Act (FLSA). Count Three alleges violations of the FLSA for defendant's failure to pay plaintiff overtime.

Count Three has been dismissed pursuant to the agreement of the parties. This matter is before the Court upon defendant's Motion for Summary Judgment on Counts One and Two. Plaintiff opposes the Motion.

**Standard of Review**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its

> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.

A fact is material only if its resolution might affect the outcome of the lawsuit under the

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe

the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dept. of

Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557,

562 (6th Cir. 1985).

However, summary judgment should be granted if a party who bears the burden of proof

at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48

F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere

existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v.

Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).

6

Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

### Discussion

Because plaintiff's Equal Pay Act claim in Count Two and claim for wage discrimination under Ohio law in Count One are based on the same facts, the Court will address them first and will then address plaintiff's claim for discriminatory discharge under Ohio law that was also presented in Count One.

**1. Equal Pay Act Claim**

The Equal Pay Act prohibits an employer from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. *See* 29 U.S.C. § 206(d)(1). In order to establish a *prima facie* case under the Equal Pay Act, a plaintiff must demonstrate than an employer pays members of the opposite sex more for work that requires equal skill, effort, and responsibility. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974).

Once the plaintiff establishes a *prima facie* case, the defendant must prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality; or (4) any other factor than sex. 29 U.S.C. § 206(d)(1). Summary judgment on an Equal Pay Act claim in the defendant's favor is appropriate "only if the record shows that [the defendant] established the [affirmative] defense so clearly that no rational jury could have found to the contrary." *Buntin v. Breathitt Country Bd. of*

7

*Educ.,* 134 F.3d 796, 800 (6th Cir. 1998) (quoting *Equal Employment Opportunity Comm'n v. Delaware Dep't of Health and Soc. Servs.,* 865 F.2d 1408, 1414 (3d Cir.1989)).

If the employer meets this burden, the plaintiff "bears the burden of producing evidence creating a triable issue of fact that the reasons proffered by [the] [d]efendant[] are pretextual." *Balmer v. HCA, Inc.*, 423 F.3d 606, 613 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (U.S. 2011).

### A. *Prima Facie* Case

Defendant does not offer any argument that plaintiff has failed to establish a *prima facie* case under the Equal Pay Act. At the time of her termination, plaintiff, a female, was a PSM at AutoZone Store 1799 and paid $10.00 per hour. At the same time, defendant employed four male PSMs at AutoZone Store 1799 each of whom was paid more than plaintiff:[3] Steve Durden was paid $12.00 per hour, Edward Shaffer was paid $11.50 per hour, Terrence Mathis was paid $11.00 per hour, and Darrell McCullum was paid $11.12 per hour. The Court finds that plaintiff has therefore established a *prima facie* case.

### B. Defendant's Affirmative Defense

Since plaintiff has established a *prima facie* case, defendant is entitled to summary judgement only if it has so clearly established a statutory defense so that there is no genuine issue as to whether plaintiff's lower pay rate was based, in whole of in part, on her sex. *See Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005).

---

[3]      Defendant also employed two other female PSMs at Store 1799, Temekia Fowlkes and Danielle Dancy. At the time plaintiff was a PSM, Ms. Fowlkes was being paid $13.98 and Ms. Dancy was being paid $12.00 per hour. Ms. Fowlkes and Ms. Dancy were thus the two highest paid PSMs. The fact that the two highest paid PSMs were female, however, does not preclude plaintiff from establishing a *prima facie* case. *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) (noting that the presence of a few women among a higher paid group did not defeat an Equal Pay Act claim).

Defendant relies on the fourth affirmative defense—a factor other than sex—to justify the pay rate difference between plaintiff and the male PSMs. Defendant has explained its paysetting procedure as follows:

> For initial pay rate of a PSM, there are set ranges that are generated by AutoZone that take into account a store's volume in sales, as well as geographic location . . . Where a new PSM is placed in a range is determined by his or her store manager who proposes an hourly pay rate for the new PSM based on his or her assessment of the individual's knowledge, skills, abilities with respect to retail, management, and automotive experience (both before employment with AutoZone and during employment with AutoZone). If the store manager proposes an hourly pay rate that is within the range, the district manager will usually approve that pay rate without looking at the rates of the other employees in the same position at the same store. The district manager will then seek approval from AutoZone's Human Resources department. Typically, if the district manager requests a pay rate within the range, the request will be approved. Human Resources will usually not examine the pay rates of other PSMs when it approves a new PSMs pay rate. (Doc. 19 Ex. D p. 2-3).

Defendant argues the difference between plaintiff's pay rate and those of the male PSMs is attributable to their respective levels of outside automotive experience, tenure with AutoZone, and education.

The Equal Pay Act's catch-all provision of 'a factor other than sex' "does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.,* 843 F.2d 249, 253 (6th Cir.1988) (citation omitted). A wage differential based on education or industry experience is a 'factor other than sex' for purposes of the Equal Pay Act. *Balmer*, 423 F.3d at 612 (upholding defendant's affirmative defense of experience where the employer's decision-maker had determined male had greater relevant industry experience than plaintiff); *Bahner v. Aelita Software Corp.*, 2005 WL 2416549 (S.D. Ohio Sept. 30, 2005) (granting summary judgement to defendant on its affirmative defense where male comparator had an advanced degree and more relevant industry experience).

The Court will compare plaintiff's qualifications and background with those of the male

9

PSMs she has identified as comparators.

### i. Plaintiff's Background and Work History

In her application for AutoZone, plaintiff represented her employment history as follows. From February 1998 to December 1998 (10 months), plaintiff was employed as a cashier at G&G Rave.  Plaintiff worked for Sea World from July 1999 to November 1999 (4 months) in operations, doing money bag drops and watching over children. After that, plaintiff worked from May 2000 to December 2000 (9 months) for Case Western Reserve as a cashier and working on salad bar preparation. Finally, plaintiff worked from July 2007 to November 2007 (4 months) at Value World as a cashier. On her employment application for AutoZone, plaintiff indicated that she had no previous automotive or managerial experience and one to two years of retail experience.

Plaintiff was hired by defendant as a part-time commercial driver on February 26, 2009 at $8.00 per hour. On October 24, 2010, plaintiff was promoted from commercial driver to commercial specialist, a management position on the commercial side of AutoZone. With her promotion, plaintiff's pay rate increased from $8.50 per hour to $10.00 per hour. At that time plaintiff had been working for defendant for approximately twenty months.  Plaintiff was moved to a PSM position on June 5, 2011. This was a lateral move from the commercial to the DIY side of AutoZone. Finally, plaintiff's employment was terminated August 15, 2011.

### ii. Shaffer

Edward Shaffer was hired by AutoZone on September 9, 2008, and was promoted to PSM on November 21, 2010 (26 months). His starting salary when he became a PSM was $11.50 per hour. Prior to working for AutoZone, Mr. Shaffer had worked for Car Parts

Warehouse, a competitor of AutoZone, from May 2006 until July 2006 (2 months). Before that, Mr. Shaffer had worked as a dismantler for K and P Auto Wrecking from March 2004 to May 2006 (26 months). His employment application for AutoZone indicates that he had five to ten years of automotive experience. (Doc. 19. Ex E p. 10).

Mr. Shaffer was paid $1.50 more per hour than plaintiff when he was promoted to PSM. However,  Mr. Shaffer's tenure with AutoZone exceeded plaintiff's by approximately six months at the time of his promotion. Moreover, Mr. Shaffer had at least 28 months of additional outside automotive experience prior to working at AutoZone, which plaintiff did not have. Based on the evidence, a reasonable juror must conclude that Mr. Shaffer was paid more than plaintiff because of his automotive experience.

### iii. Mathis

Terence Mathis was hired by AutoZone on June 23, 2010, and was promoted to PSM on August 14, 2011 (14 months). His starting salary when he became a PSM was $11.00 per hour. Mr. Mathis has a degree in Auto/Diesel Technology. Prior to working for AutoZone, Mr. Mathis worked as a mechanic for World Resources from July 2007 to November 2007 (4 months). Before that, Mr. Mathis worked as an apprentice mechanic for Crestmont Cadillac from February 2001 until May 2003 (27 months). His employment application for AutoZone states that he has five to ten years of automotive experience, three to five years of management experience, and one to two years of experience with commercial accounts before he began with AutoZone. (Doc. 19 Ex. E p. 18-20).

At the time of Mr. Mathis promotion to PSM, he had worked for defendant 14 months, whereas plaintiff had worked for defendant 20 months. He thus had less tenure with AutoZone

than plaintiff, yet he was paid $1.00 more per hour. However, defendant has put forth evidence that Mr. Mathis had at least 31 months of outside automotive experience before he came to AutoZone, as well as more experience in management and with commercial accounts and an automotive degree. There is no genuine issue that factors other than sex—education, automotive experience, management experience, and commercial accounts experience—explain why Mr. Mathis' salary was higher than plaintiff's.

### iv. McCullum

Darrell McCullum was hired by AutoZone on August 11, 2008. He was promoted to PSM on April 26, 2009 (8 months) at a pay rate of $10.25 per hour. In October 2009, Mr. McCullum's pay rate was increased to $10.71 per hour. In October 2010, Mr. McCullum's pay rate was increased to $11.12 per hour. Prior to beginning at Store 1799, Mr. McCullum had previously worked for two other AutoZone locations. Mr. McCullum worked for AutoZone in Fairborn, Ohio from February 2007 until April 2008 (15 months). He also worked at AutoZone in Xenia, Ohio from October 2004 until May 2006 (20 months). On his employment application for Store 1799, Mr. McCullum indicated that he had three to five years of automotive experience, and three to five years of experience with commercial accounts. (Doc. 19 Ex. E p. 24-29).

Mr. McCullum's tenure with AutoZone and his commercial accounts experience—factors other than sex—exceeded plaintiff's by several years and explain why he was paid more.

### v. Durden

Steve Durden was hired March 9, 2009 and was promoted to PSM October 10, 2010 (19

12

months). His starting salary as a PSM was $12.00 per hour.

Mr. Durden began his employment with AutoZone less than two weeks after plaintiff began hers. He was promoted to PSM at $12.00 per hour just two weeks before plaintiff was promoted to commercial specialist at $10.00 per hour. Mr. Durden had less tenure with AutoZone, yet his starting pay for as a PSM was $2.00 per hour higher than plaintiff's. However, Mr. Durden owned his own garage before he began working for AutoZone and was known to possess vast automotive knowledge. (Doc. 19 Ex. E). Plaintiff acknowledges in her deposition that Mr. Durden had automotive experience that she lacked. *See* (Doc. 19 Ex. A p. 27). Mr. Durden's prior ownership of a garage and automotive knowledge are factors other than sex which explain why Mr. Durden commanded a higher rate of pay than did plaintiff.

The Court finds there is no genuine issue of material fact that the pay rate disparities between plaintiff and each of the male PSMs were based on factors other than sex. Accordingly, defendant has met its burden of proving an affirmative defense under the Equal Pay Act.

### C. Pretext

Having proven its affirmative defense, the burden now shifts back to plaintiff to produce evidence creating a triable issue of fact that defendant's reasons for the pay differences are pretextual. Plaintiff may do this by showing the reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

Plaintiff does not appear to challenge the factual basis of AutoZone's reasons for the pay differential between plaintiff and male PSMs. Rather, she argues that AutoZone ignored plaintiff's "extensive customer service background," overly relies on automotive experience in

13

male PSMs, and overly emphasizes brief differences in seniority between plaintiff and similarly-situated male PSMs.

The Court finds plaintiff's arguments unpersuasive. Courts do not "act[ ] as a super personnel department, overseeing and second guessing employers' business decisions." *Bender v. Hecht's Dep't Stores,* 455 F.3d 612, 627 (6th Cir. 2006) (internal quotation marks omitted). Nevertheless, " [a]n employer's business judgment ... is not an absolute defense to unlawful discrimination." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003) (en banc). "[And] decisions made on the basis of subjective criteria . . . can provide a ready mechanism for discrimination, and thus such decisions are carefully scrutinized." *Idemudia v. J.P. Morgan Chase,* 434 F. App'x 495, 504–05 (6th Cir. 2011) (unpublished) (internal quotation marks omitted). "[T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation ." *Id.* To show that defendant's reasons did not actually motivate its conduct, plaintiff must show that AutoZone's "business decision was so lacking in merit as to call into question its genuineness." *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir. 1996) (internal quotation marks omitted).

Plaintiff attempts to establish pretext by claiming that AutoZone ignored her customer service background in setting pay. Plaintiff specifically points to Mr. Shaffer, and notes he lacked any previous customer service experience before joining AutoZone, yet he was paid $1.50 more per hour. As discussed earlier, while Mr. Shaffer did lack previous retail experience, he had not only worked for AutoZone longer than did plaintiff, but he also had significant automotive experience before joining AutoZone that plaintiff lacked. Plaintiff's one to two years

14

of retail experience before she joined AutoZone is not sufficient to call into question the honesty of AutoZone's explanation for the pay differential. Being a retailer of automotive products, AutoZone's business decision to accord greater weight to automotive experience than to customer service experience in setting pay for its management employees is not so lacking in merit to call into question its genuineness.

Plaintiff also objects that defendant inconsistently applied tenure with AutoZone in setting pay, and in support suggests that the other female PSMs should have been earning even more money than they were, given their tenure with AutoZone. Specifically, plaintiff notes that Steven Durden was promoted to PSM at a starting rate of $12.00 per hour after only 19 months of tenure with AutoZone. Danielle Dancy, in contrast, was promoted to PSM when she had  29 months of tenure with AutoZone, yet she began at $10.69 per hour.

The Court notes that male PSM Darrell McCullum's starting pay rate when he was promoted to PSM was $10.25 per hour. At that time he had worked for three AutoZone locations for a total of 43 months. In spite of the fact that Ms. Dancy had fewer months of tenure with AutoZone than Mr. McCullum when she was promoted to PSM—29 months versus 43 months—she was paid more than Mr. McCullum. Plaintiff's evidence shows that defendant "pays some men more than women and some women more than men depending on a variety of factors." *Balmer*, 423 F.3d at 613 (rejecting plaintiff's pretext argument that defendant relied on experience on an *ad hoc* basis because male and female employees had different levels of industry experience).

Finally, the Court notes that the two highest paid PSMs at Store 1799, Temekia Fowlkes

15

and Danielle Dancy, were both female.[4] *Accord Albritton v. Secretary of State*, 2010 WL

4312868 (M.D. Ga. Oct. 25, 2010) (finding it relevant to a determination there was no pretext

where one of the highest-paid individuals with plaintiff's job was female); *Newview v. D.O.C.*

*Optics Corporation*, 2009 WL 728549 at *9 (E.D. Mich. March 19, 2009) (granting summary

judgment and finding no evidence of pretext where defendant proved that male comparators had

greater experience than plaintiff and where the highest paid person with plaintiff's job was

female).

There is no triable issue whether defendant's proffered reasons for setting PSM pay did

not actually motivate its decision. Consequently, the Court GRANTS defendant's Motion for

Summary Judgement as to plaintiff's Equal Pay Act claim.

### 2. Wage Discrimination Claim Under Ohio Law

Plaintiff has also alleged a claim for wage discrimination under Ohio law.          Ohio

Revised Code § 4112.02(A) provides that it is an unlawful discriminatory practice for any

employer "because of the * * * sex * * * of any person, to discharge without just cause, to refuse

to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms,

conditions, or privileges of employment, or any matter directly or indirectly related to

employment." The Ohio Supreme Court has held that "federal case law interpreting Title VII of

the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S.Code, is generally applicable to

cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Commt. v.*

*Ohio Civil Rights Comm.* 421 N.E.2d 128, 131 (Ohio 1981). The Supreme Court has determined

that Title VII incorporates the four affirmative defenses of the Equal Pay Act. *County of*

---

[4]        Ms. Dancy and Ms. Fowlkes are now store managers for AutoZone.

*Washington v. Gunther*, 452 U.S. 161, 192 (1981).

Consequently, because the Court has found that plaintiff proved its affirmative defense under the Equal Pay Act and plaintiff has failed to produce a triable issue of fact that defendant's explanation is pretextual, plaintiff's claim for wage discrimination under Ohio law fails.

Accordingly, the Court GRANTS defendant's Motion for Summary Judgment on plaintiff's claim for wage discrimination under Ohio law as well.

### 3. Discriminatory Discharge Claim Under Ohio Law

Plaintiff claims gender was a motivating factor in defendant's decision to terminate her employment, which is also in contravention Ohio Revised Code § 4112.02(A).

Because plaintiff alleges no direct evidence of discrimination, her claim is based on circumstantial evidence, and the *McDonnell Douglas* framework applies.  Thus, "plaintiff bears the initial burden of demonstrating a *prima facie* case by a preponderance of the evidence showing (1) membership in the protected class; (2) that she suffered an adverse action; (3) that she was qualified for the position; and (4) that she was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class."  *Monak v. Ford Motor Co.*,  2004 WL 784119 (6th Cir. April 5, 2004) (citations omitted).

Unlike an Equal Pay Act claim, once the plaintiff has established a *prima facie* case, the burden of production shifts to the employer to only *articulate* a legitimate, nondiscriminatory reason for the adverse employment action.  Plaintiff must then demonstrate that the employer's proffered reason for the adverse action was pretextual. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994).

### A. *Prima Facie* Case

17

Defendant concedes that the first three elements of a *prima facie* case are met. Plaintiff argues that she has established the fourth element and made out her *prima facie* case because a similarly situated male PSM, Edward Shaffer, was not terminated for improper cash handling. Specifically, plaintiff points out that Mr. Shaffer was issued two CARFs for "Improper Cash Handling Procedures," both of which resulted in a loss to AutoZone, yet he was not fired. On October 26, 2010, Mr. Shaffer received a CARF when the final count on a drawer was $18.44 short. (Doc. 20 Ex. 7). On February 19, 2011, Mr. Shaffer received a second CARF when a drawer was $50.00 short. (Doc. 20 Ex. 7).

Defendant contends that plaintiff fails to make out a triable claim because Mr. Shaffer was not similarly situated to the plaintiff. Defendant argues that the improper cash handling by Mr. Shaffer is different from plaintiff's conduct. Defendant acknowledges that plaintiff's CARF indicates her conduct was "Improper Cash Handling Procedures." However, defendant points out that plaintiff's failure to reconcile a register and failure to secure a till in the safe overnight was not only improper cash handling procedure, but also, as noted on plaintiff's CARF for the incident, a "Failure to Comply with AutoZone Policy." (Doc. 19 Ex. C p. 31). Such an indication is absent from Mr. Shaffer's CARFs when his register was short. (Doc. 21 Ex. B p. 5, 6). Additionally, defendant notes that plaintiff also had a CARF for improper cash handling when her register was short and plaintiff was not fired because of that incident. (Doc. 21 Ex. B p. 7).

The Court finds that Mr. Shaffer and plaintiff are not similarly situated. To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish

18

their conduct or their employers treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). A register being short is not the same conduct as failing to reconcile a till, leaving a till unsecured in a register, and failing to make deposits into a safe. The Court concludes that Mr. Shaffer and plaintiff were not similarly situated, so plaintiff has failed to establish the fourth element of her *prima facie* case.

Plaintiff has also alleged that Mr. Shaffer left a till out overnight and was not terminated. However, plaintiff relies solely on her own deposition testimony, which is insufficient to sustain her burden. (Doc. 19 Ex. A p. 42). *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

### B. Pretext

Even assuming *arguendo* that plaintiff has established a *prima facie* case, defendant has articulated a legitimate reason for plaintiff's termination. Defendant has stated that plaintiff was fired for failing to properly secure AutoZone funds resulting in a $250 loss and for improper markdowns for customers.  Under the third step of the *McDonnell Douglass* analysis, plaintiff must produce evidence that the reasons identified by defendants are a pretext for discrimination. As in an Equal Pay Act claim, plaintiff may do this by showing the reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). "The first type of showing is easily recognizable and consists of evidence that the proffered bases for plaintiff's discharge never happened. . . . Under the second type of showing the plaintiff attempts to indict the credibility of [her] employer's explanation by showing

19

circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Carter v. Toyota Tsusho America, Inc.*, 2013 WL 3306336, *8 (6th Cir. July 2, 2013).

Plaintiff does not deny that she violated AutoZone policy by failing to reconcile and secure the till at the end of the day and that her failure caused AutoZone a $250 loss. (Doc. 19 Ex. A p. 42). Plaintiff has also admitted that she improperly marked down items for customers. (Doc. 19 Ex. A p. 4). Nor does she argue that failing to count down the till and secure it overnight was insufficient to warrant her discharge. Rather, it appears that plaintiff is arguing that her actions did not actually motivate defendant's decision to terminate her employment.

Plaintiff attempts to establish pretext by pointing again to the disparate treatment of Mr. Shaffer when he allegedly left a till out. However, as discussed earlier, plaintiff lacks evidence to substantiate that allegation. Plaintiff next argues that defendant's reliance on the improper markdowns in its decision to terminate her demonstrates pretext because markdowns are "common and allowed at AutoZone."[5] However, plaintiff admits that she knew those markdowns were a violation of company policy. Finally, plaintiff argues that defendant's investigation of the $250 loss was a sham because it failed to interview Mr. Durden, the PSM who discovered the unsecured till, and whom plaintiff notes was later fired from AutoZone for engaging in fraudulent returns. Plaintiff, however, seems to ignore the fact that she was terminated for "failure to properly secure funds resulting in a loss" and not for actually taking any money. (Doc.

---

[5]     Plaintiff alleges that Mr. Vruvas, her district manager, encouraged AutoZone employees to do whatever it took to make a sale, including marking down items by a few dollars in violation of stated company policy. This allegation is again unsupported by any other evidence in the record and insufficient to preclude summary judgement. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992).

19. Ex. A. p. 86). *See Novotny v. Elsevier*, 291 Fed. Appx. 698 (6th Cir. 2008) (finding plaintiff's pretext argument lacked merit where defendant had followed its investigatory procedures and plaintiff admitted to having violated company policy).

Even if plaintiff had established a *prima facie* case for discriminatory discharge, the record before the Court includes a legitimate, non-discriminatory reason for plaintiff's termination. There is no evidence that defendant's reason for plaintiff's termination is pretextual and that gender in any way motivated defendant's decision to terminate her employment.

Accordingly, defendant's Motion for Summary Judgment on plaintiff's claim of discriminatory discharge is also GRANTED.

### Conclusion

For all the reasons stated above, defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.


/s/Patricia A. Gaughan
PATRICIA A. GAUGHAN
Date:   10/25/13                United States District Judge